Harold E. Koreman, J.
In this article 78 proceeding petitioner seeks an order annulling the determination of the Acting Commissioner of Education which set aside and vacated the election of a member of the local school board of the City of Schenectady, and ordered that a new election be held.
The decision of the Commissioner was based on alleged irregularities in the conduct of the election in that there was an unexplained discrepancy of two votes between the public counter and the protective counter on the voting machine with the possibility that a candidate .was credited with two votes which were not cast for him; that concededly at least three persons were disenfranchised by being denied their right to vote for not presenting themselves before the time set for closing of the polls, when it is admitted they did attempt to vote before such time. These circumstances, the Commissioner determined, coupled with the fact that the candidate declared elected received a plurality of only three votes, lead to the conclusion that the results may not accurately reflect the will of the voters, and, therefore, a new election was required.
Petitioner contends that while the respondent Commissioner states in his order that the discrepancy in the number of votes cast would alone be insufficient to invalidate the election, that fact did influence his determination and resulted in an arbitrary order. Furthermore, petitioner .argues that the person who received the second greater number of votes failed to sustain the burden of proving on his appeal to the Commissioner that had the three disenfranchised persons cast their votes the results of the election would have been changed.
It is now well established that decisions of the Commissioner of Education made pursuant to section 310 of the Education Law, pertaining to the general school system of the State within the authority and control of the Department of Education, are final and not subject to review by the courts unless purely arbitrary. (Matter of Board of Educ. v. Allen, 6 N Y 2d 127; Matter of Vetere v. Allen, 15 N Y 2d 259.) The same finality is accorded to decisions of the Commissioner in disputes concerning the validity of school district elections by section 2037 of the Education Law, which also grants him discretionary power to order a new election. Applying these principles to the three factors considered by the Commissioner, namely a winning *926 margin of three votes, two less voters than votes counted, and at least three persons disenfranchised, it cannot be said that the Commissioner was purely arbitrary in invalidating the election and ordering a new one. The test that has been applied in determining whether an election should be set aside and a new one ordered is that ‘ ‘ unless there exists a probability that the results of the election would have been changed by the elimination of the illegal votes cast, the election will not he set aside. (Matter of Badillo v. Santangelo, 15 A D 2d 341; Matter of Acevedo v. Power, 18 N Y 2d 700; Matter of Ippolito v. Power, 22 N Y 2d 594.) ” (Matter of Boyes v. Allen, 32 App. Div. 990, 991.) Here, however, we do not have any question of illegal votes cast, and thus it becomes impossible to determine the probabilities of any change in the result of the election by eliminating invalid votes. Nor is it possible to determine the probable result if there had been no discrepancy between the public and protective counter, and if the disenfranchised persons had been permitted to vote. Under such circumstances, and the extreme closeness of the vote, it cannot he said that the Commissioner improperly exercised his discretion in ordering a new election, and, therefore, he was not purely arbitrary. Accordingly, the petition is dismissed.